# EXHIBIT C

6/17/24

# THE STATE OF TEXAS
## DISTRICT COURT, TARRANT COUNTY

**CITATION**                                    Cause No. 067-353540-24

### JASON NAYLOR
### VS.
### CRUSH 72, INC., ET AL

**TO: BATTLE MOTORS INC**

B/S REG AGT/CSC-LAWYERS INCORPORATING SERVICE CO
211 E 7TH ST STE 620
AUSTIN, TX 78701-

You said DEFENDANTS are hereby commanded to appear by filing a written answer to the PLAINTIFF'S ORIGINAL PETITION at or before 10 o'clock A.M. of the Monday next after the expiration of 20 days after the date of service hereof before the 67th District Court, 100 N CALHOUN, in and for Tarrant County, Texas, at the Courthouse in the City of Fort Worth, Tarrant County, Texas said PLAINTIFF being

JASON NAYLOR

Filed in said Court on June 11th, 2024 Against
CRUSH 72 INC, MICHAEL PATTERSON, BATTLE MOTORS INC

For suit, said suit being numbered 067-353540-24 the nature of which demand is as shown on said PLAINTIFF'S ORIGINAL PETITION a copy of which accompanies this citation.

### DAVID D RAPP
Attorney for JASON NAYLOR Phone No. (817)596-4200
Address    102 HOUSTON AVE STE 300 WEATHERFORD, TX 76086

_____Thomas A. Wilder_____, Clerk of the District Court of Tarrant County, Texas. Given under my hand and the seal of said Court, at office in the City of Fort Worth, this the 13th day of June, 2024.

By ____Natalie Thigpen____
NATALIE THIGPEN

A CERTIFIED COPY
ATTEST: 06/13/2024
THOMAS A. WILDER
Deputy CT CLERK
TARRANT COUNTY, TEXAS
BY: /s/ Natalie Thigpen

NOTICE: You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 AM. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you. In addition to filing a written answer with the clerk, you may be required to make initial disclosures to the other parties of this suit. These disclosures generally must be made no later than 30 days after you file your answer with the clerk. Find out more at TexasLawHelp.org.

**Thomas A. Wilder, Tarrant County District Clerk, 100 N CALHOUN, FORT WORTH TX 76196-0402**

## OFFICER'S RETURN  *067353540240000007*

Received this Citation on the _____ day of _____, _____ at _____ o'clock ___M; and executed at _____ within the county of _____, State of _____ at _____ o'clock ___M on the _____ day of _____, _____ by delivering to the within named (Def.): _____ defendant(s); a true copy of this Citation together with the accompanying copy of PLAINTIFF'S ORIGINAL PETITION, having first endorsed on same the date of delivery.

Authorized Person/Constable/Sheriff: _____
County of _____ State of _____ By _____ Deputy

Fees $ _____
State of _____ County of _____ (Must be verified if served outside the State of Texas)
Signed and sworn to by the said _____ before me this _____ day of _____, ____
to certify which witness my hand and seal of office
(Seal)
County of _____, State of _____

## *CITATION*

Cause No. 067-353540-24

JASON NAYLOR

VS.

CRUSH 72, INC., ET AL



ISSUED

This 13th day of June, 2024

Thomas A. Wilder
Tarrant County District Clerk
100 N CALHOUN
FORT WORTH TX 76196-0402

By          NATALIE THIGPEN Deputy

---

DAVID D RAPP
Attorney for: JASON NAYLOR
Phone No. (817)596-4200
ADDRESS: 102 HOUSTON AVE STE 300

WEATHERFORD, TX 76086

## *CIVIL LAW*



*0673535402400007*
SERVICE FEES NOT COLLECTED
BY TARRANT COUNTY DISTRICT CLERK
ORIGINAL

FILED
TARRANT COUNTY
6/11/2024 3:35 PM
THOMAS A. WILDER
DISTRICT CLERK

CAUSE NO. 067-353540-24

| | | |
|---|---|---|
| JASON NAYLOR, | § | IN THE DISTRICT COURT |
| *Plaintiff,* | § | |
| | § | |
| VS. | § | |
| | § | _____ JUDICIAL DISTRICT |
| CRUSH 72, INC., MICHAEL | § | |
| PATTERSON, and BATTLE | § | |
| MOTORS, INC. | § | TARRANT COUNTY, TEXAS |

## PLAINTIFF'S ORIGINAL PETITION

Plaintiff Jason Naylor ("Naylor") files his Original Petition against Defendants Crush 72, Inc. ("Crush 72"), Michael Patterson ("Patterson"), and Battle Motors, Inc. ("Battle") (collectively, "Defendants") and respectfully shows the Court the following:

### I.
### DISCOVERY LEVEL

1. Discovery in this case is to be conducted under Level 3 of Rule 190 of the Texas Rules of Civil Procedure.

### II.
### STATEMENT OF MONETARY RELIEF SOUGHT

2. Naylor seeks monetary relief over $1,000,000.00.

## III.
### PARTIES AND SERVICE

3. Plaintiff Jason Naylor resides at 2138 A.N. County Road 2202, Palestine, Texas 75803. The last digits of his driver's license are 730, and the last three digits of his social security number are 823.

4. Defendant Crush 72, Inc. is a Delaware corporation who may be served through its registered agent, The Corporation Trust Company, at Corporation Trust Center, 1209 Orange St., Wilmington, Delaware 19801.

5. Defendant Michael Patterson is an individual who is a nonresident of Texas and may be served with process at 612 Hampton Ave, Suite B, Venice, California 90291, or wherever he may be found.

6. Defendant Battle Motors, Inc. is a foreign for-profit corporation organized and existing under the laws of Delaware, whose principal office is located at 1951 Reiser Avenue SE, New Philadelphia, Ohio 443, is authorized to do business in Texas and may be served through its registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th St., Ste. 620, Austin, Texas 78701, or wherever it may be found.

IV.
JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this matter because the relief requested herein is within the jurisdictional limits of the Court.

8. Venue is proper in this Court under Section 15.002 of the Texas Civil Practice and Remedies Code because all or a substantial part of the events or omissions giving rise to the claims asserted in this suit occurred in Tarrant County, Texas.

V.
FACTUAL SUMMARY

9. Crush72 is the registered owner of a Cessna model 650 aircraft bearing serial number 650-7042 and U.S. registration number N657T (the "Aircraft"). Patterson is the CEO and owner of Crush72. Battle is a commercial manufacturer of severe-service vocational trucks. Patterson is also the CEO of Battle. Naylor is a licensed pilot with 24 years of flight and aircraft management experience.

10. On or about September 15, 2022, Patterson sought out Naylor, in Texas, for his services as a pilot, offering Naylor employment with Crush72 to serve as the Chief Captain of the Aircraft, which was located and hangered in Fort Worth, Texas. The basic terms of Naylor's employment were as follows:

a. employment would begin on or about October 3, 2022, with a base pay salary of $300,000 per year, paid monthly; a company credit card; and a $10,000 signing bonus to be paid on his first day of employment;

b. Naylor would be responsible for all taxes;

c. either party had the option to terminate the agreement at any time with 90 days' notice;

d. Naylor would be entitled to 14 paid holidays and ten personal days per year;

e. Naylor was subject to a confidentiality provision preventing disclosure of confidential or proprietary information arising from his association with Crush72 or past employers while employed by Crush72; and

f. Naylor's performance would be formally reviewed annually under Crush72's review program for bonus.

11. Naylor accepted the terms of employment and executed the employment agreement.

12. Naylor was hired to be just the Chief Captain. In common business aviation vernacular, Naylor's position meets the definition of Senior Captain, as defined by the National Business in Aviation Association to mean:

> *The Senior Captain may have limited supervisory role of other flight crew in similar makes and models and may be qualified in multiple company aircraft. This position might be responsible for flight operation standardization in assigned makes and models. The senior captain may also have a role as a mentor within the flight department.*

Naylor entered into the agreement with Patterson with this definition in mind.

13. To the casual observer, Crush72 and Battle may seem to be unrelated. However, Battle and Crush72 are linked. The company credit card provision in Naylor's agreement was fulfilled by the issuance of a Battle Motors Brex credit card. Along with the credit card, Naylor quickly found himself subject not to the policies and procedures of Crush72 but rather the employment policies and procedures of Battle. Among other things, Battle directed many of Naylor's actions with regard to the flights of the Aircraft, managed by Battle's Senior Executive Asisstant, Cassie Selby, and management of aircraft expenses, with Aircraft expenses being overseen by or directed by Battle's Chief Financial Officer, Oliver Weilandt, exclusively. Additionally, Patterson gave direction to Naylor, and made decisions regarding the Aircraft and Naylor's actions, in his capacity as CEO of Battle, and Patterson did so almost exclusively through his Battle e-mail account.

14. Moreover, on information and belief, Battle was directly responsible for fuel costs of the Aircraft and was ultimately responsible for payment of all aircraft-related expenses, meaning Battle was ultimately

responsible for Crush72's expenses, including Naylor's salary. The reason for this is that the Aircraft itself, and thus Crush 72, had income from dry leases of the Aircraft of less than $200,000. More than ninety percent of Aircraft flights were for the benefit of Battle and its key personnel, such as its sales VPs, CTO, CFO, and board members, to name a few. In truth, the Aircraft operated like a Battle-owned corporate jet.

15. Shortly after hiring Naylor on October 12, 2022, Patterson asked Naylor how he could save money. Naylor responded by suggesting that Patterson "get[]rid of the management company." During this conversation, Patterson responded, "I will tell you what . . . whatever savings you can get me, I will give you $.33 on each dollar saved." Patterson's statement was the sole factor that induced Naylor to undertake management responsibilities in addition to his position as Chief Captain of the Aircraft. Over the next month-and-a-half of his employment, Naylor recognized numerous changes that could be made regarding the management of the Aircraft and the staffing of pilots and other support personnel. Principle among these changes was the termination of Wheels Up, the Aircraft's existing management company, and transferring its management responsibilities in house. Patterson then terminated Wheels Up effective December 4, 2022.

16. By the end of December 2022, Naylor had further identified efficiencies that could be implemented regarding pilot staffing, and he

prepared a demonstration—in the form of an excel document—of savings on Aircraft management moving forward for the next year with Naylor's assuming the management responsibilities Wheels Up had previously performed. Recognizing that these management responsibilities exceeded the scope of Naylor's existing employment, Naylor then reiterated Patterson's offer to pay Naylor a cut of the savings he could obtain for Patterson. That agreement was for payment of "$.33 on each dollar saved," which would necessarily include such dollars saved as a result of Naylor's assumption of the management responsibilities formerly performed by Wheels Up.

17. During the next 18 months, Naylor saved Patterson and his companies approximately $2,594,731.50. Based on Patterson's agreement to pay Naylor thirty-three cents on each dollar of these savings, Naylor's cut of this savings would total $856,261.40. The savings Naylor achieved included, but are not limited to, cancellation of engine programs at $1,180/hour flown. During Naylor's tenure, he flew 606 hours, this being a $715,080 savings alone. Naylor achieved additional savings while employed at Crush72, including moving all other pilots to a daily rate; using military discounts on parking, airfare, hotels, and food; moving the Aircraft's base location from California to Texas; and providing continuous vigilance to the bottom line.

18. Rather than honor the agreement to pay Naylor thirty-three cents of every dollar Naylor saved Patterson and his companies, Patterson has

refused. Further, Crush72 was obligated to pay Naylor compensation in the amount of $25,000.00 per month, yet Crush72 failed to do so for the months of April through June. In total, Naylor is owed $976,261.40, comprised of unpaid salary and amounts due under his separate agreement for management services.

## VI.
## CAUSES OF ACTION

### A. Breach of Contract – Chief Captain Agreement

19. Naylor has a valid and enforceable contract with Crush72 and is the proper party to bring this suit. Naylor performed under the contract and stood ready, willing and able to continue performance under the contract. Crush72 breached the contract when it failed to pay Naylor as required by the contract. As a result of Crush72's breach by its failure to pay, Naylor has been damaged in the amount of $120,000.

### B. Breach of Contract – Aircraft Management Services

20. After being hired by Crush72 to provide only pilot services and oversight of pilot operations for Crush72, Patterson asked Naylor how he could save money regarding the management of the Aircraft. Naylor identified certain efficiencies that could reduce the overhead cost and presented them to Patterson, and Patterson offered to pay Naylor $.33 for every dollar (i.e., 33%) saved. Naylor accepted Patterson's offer and, in performing that agreement,

saved Crush72, Patterson, and Battle approximately $2,594,731.50. Naylor reported these savings to Patterson and sought payment of the 33% of savings promised by Patterson for his performance. Patterson failed to pay Naylor the amount owed, thereby breaching their contract for management services. As a result of this breach, Naylor has been damaged in the amount of $856,261.40.

### C. Fraudulent Inducement – Management Services Agreement

21. At Patterson's request, Naylor demonstrated how he could save Patterson, Crush72, and Battle on aircraft management expenses. As a result, Patterson represented to Naylor that he would be paid 33% of the savings he achieved by undertaking management of the Aircraft. That representation was false. When Patterson made that representation, he knew it was false, or made the representation recklessly, as a positive assertion, and without knowledge of its truth. Patterson made the representation with intent that Naylor act on it for the purpose of recognizing millions of dollars in savings for the benefit of Crush72 and Battle. Naylor relied on Patterson's representation and provided aircraft management services for over a year. As a result of Patterson's representation, Naylor provided the management services, for which he was never paid and which resulted in savings to Patterson, Crush72, and Battle of $2,594,731.50 and damage to Naylor of $856,261.40.

### D. Vicarious Liability – Joint Enterprise

22. Patterson, Crush72, and Battle were engaged in a joint enterprise with regard to the ownership, management, and use of the Aircraft. Patterson, Crush72, and Battle had an agreement, express or implied, regarding the Aircraft. Patterson, Crush72, and Battle had the common purpose of the use and enjoyment of the Aircraft for business purposes in the operation of Battle and Crush72's business. Patterson, Crush72, and Battle also had a community of pecuniary interest in the use and operation of the Aircraft by Crush72 acquiring the personnel and services necessary for the Aircraft's use and operation and by Battle using the Aircraft for its business purposes and monitoring or authorizing the payment for the necessary personnel and services. Finally, Patterson, Crush72, and Battle each had equal right to direct control of the Aircraft and Crush72, as described above.

23. Patterson, Crush72, and Battle or each of them is liable to Naylor for the breaches of contract or fraud committed against Naylor while all or each of them were acting within the clear scope of the enterprise—the ownership, use, and operation of the Aircraft.

### E. Attorneys' Fees

24. As a result of the Defendants' actions, Naylor was required to retain the services of Eggleston, King, Davis LLP to represent him in bringing these claims against Defendants. Naylor is entitled to recover his reasonable

and necessary attorneys' fees pursuant to Chapter 38 of the Texas Civil Practices & Remedies Code.

## F. Conditions Precedent

25. All conditions precedent to bringing this suit have occurred or have been fulfilled.

PRAYER

Plaintiff Jason Naylor respectfully prays that Defendants Crush 72, Inc., Michael Patterson, and Battle Motors, Inc. be cited to appear and answer herein and that he be awarded all relief requested herein, including, but not limited to:

a) actual damages suffered, as requested herein;

b) reasonable and necessary attorneys' fees, expert costs, and costs of court;

c) pre-judgment and post-judgment interest as provided by law; and

d) such other and further relief, special or general, legal or equitable, as he may be shown to be justly entitled to receive.

Respectfully submitted,

EGGLESTON KING DAVIS, LLP
102 Houston Avenue, Suite 300
Weatherford, Texas 76086
Phone: 817.596.4200
Fax: 817.596.4269

By: /s/ David D. Rapp

David D. Rapp
State Bar No. 24027764
david@ekdlaw.com
John J. Shaw
State Bar No. 24079312
johns@ekdlaw.com

ATTORNEYS FOR PLAINTIFF
JASON NAYLOR